# BAXTER *v.* FIRST NATIONAL BANK OF KNOXVILLE.

## (*Knoxville.* September 23d, 1886.)

1. PRINCIPAL AND AGENT. *Purchase by agent. Notice.*

   An indorser on notes, who becomes agent of the owner for their collection, and obtains from the debtor a deed in trust on land to secure them; and thereafter assumes to purchase the land, of the trustee, on terms not authorized by the trust deed—paying no part of the purchase-price and taking no deed to himself—acquires no title or claim to the land himself, and can impart none to purchasers from him with notice, as against the owner of the notes secured.

2. VENDOR AND VENDEE. *Constructive notice by recitals in deeds.*

   Where, pursuant to such unauthorized sale, the trustee joins with the purchaser in conveying the lands to a third person, by deed carrying on its face notice of the above recited facts, and thereafter such third person conveys the lands, in trust, to secure certain bonds, by deed reciting and incorporating the deed to himself, all persons taking under the latter deed are affected with notice of the superior equity of the beneficiary under the first trust deed.

   Case cited and distinguished: Williams *v.* Jackson, 107 U. S., 478.

3. SAME. *Constructive notice by certificate on bonds.*

   If, upon the bonds secured by the later trust deed, there be a certificate of the trustee referring to it, this will affect purchasers of the bonds with constructive notice of the first trust deed, and of the invalidity of the sale thereunder.

4. CHANCERY PLEADING AND PRACTICE. *Sale decreed without prayer for.*

   Upon the bill of a purchaser at trustee's sale, to which the trustee and beneficiaries are parties, seeking to enjoin collection of his notes for purchase-price, secured by lien on the land, and setting up certain credits, and asking leave to pay balance into court for distribution, the court is authorized to decree sale of the land, without specific prayer for such relief, to satisfy such balance if not paid.

   Cases cited and approved: Morelock *v.* Bernard, 15 Lea, 169; The Boston, 1 Sum., 335.

3

5. WRIT OF RESTITUTION.  *Improper, when.*

In a suit for land, where the defendant is in possession at its institution, and successful on its final trial, he is not entitled to a writ of restitution, although pending the suit he may have been put out and the plaintiff put into possession of the land, by proceedings in another case.

FROM KNOX.

Appeal from the Chancery Court of Knox County. —— Term, 1885.  W. B. STALEY, Ch.

W. M. BAXTER and ANDREWS & THORNBURGH for Baxter.

WEBB & McCLUNG for Bank.

SNODGRASS, J.  The complainant filed this bill in the Chancery Court of Roane County to remove cloud from his title to certain lands lying therein, against defendants, the First National Bank, and R. R. Swepson.

By agreement of parties the cause was transferred to the Chancery Court of Knox County.

Demurrer to the bill was overruled, answers filed, proof taken, and the cause finally heard by the Chancellor on 17th April, 1885.  He decreed in favor of defendant, the First National Bank, holding that its title to the land in controversy was superior to complainant's, or, rather, "that the equities of the First National Nank in the lands in

controversy were superior to complainant's," to quote exact language of decree. That John Baxter and complainant had actual notice, and the Wilcox Mining Company, W. P. Washburn, trustee, and the beneficiaries under the trust deed of June 1st, 1871 (through which complainant claims), had constructive notice of said superior equities.

The Chancellor further held that the decree of sale of 22d January, 1880, in the cause of *Baxter* v. *Washburne, Trustee,* was *coram non judice* and void, because neither complainant in his bill nor any defendant in answer, or by cross-bill, had sought a sale of lands.

Complainant's bill was therefore dismissed with cost.

In addition, it is recited and decreed that, "it appearing to the Court that the defendant bank was in possession of the lands at the date of the filing of complainant's bill, under and by virtue of a writ of possession issued in the cause of *The Bank* v. *Baxter et al.*, and that subsequently—to-wit, on January 1st, 1884—a writ of possession was issued in the cause of *Baxter* v. *Washburne,* and on January 4th, 1884, the Sheriff of Roane County executed said writ of possession by putting said bank out and putting complainant into possession of said lands, the Court doth decree that a writ of restitution issue to the Sheriff of Roane County, directing him to restore the said First National Bank of Knoxville to the possession of said land."

From this decree complainant appealed.

Both complainant and the bank derive title from a common source. In 1868 John Baxter, the father of complainant, who was the indorser of several notes due the bank, had these notes in his hands for collection of the maker, the Emory Iron and Coal Mining Company. For this purpose he filed a bill and attached a large amount of the property of said company, and secured in settlement of this controversy the execution of a deed of trust to E. P. Bailey, a son-in-law. This deed was executed on the 12th September, 1868. In it, among other claims secured, were those of the bank, before referred to as in Baxter's hands for collection, aggregating $11,941.10; and among other property conveyed was the land in controversy.

The deed provided that, in default of payment, E. P. Bailey being requested so to do by either of the parties in interest, should take and sell so much of the property as might be necessary to pay and discharge the amounts falling due, after advertising in one or more newspapers in Knoxville or Chattanooga at least twenty days before selling realty, the sale to be at public auction, to the highest bidder for cash, and in bar of the equity of redemption, and the trustee to *convey* and deliver the property to the purchaser.

No sale in accordance with the terms of this deed was ever made, but such a sale was assumed to have been made by the trustee to John Baxter on the 2d of November, 1869. No conveyance was executed, or pretended to be executed, and this sale only ap-

pears by recital in another deed executed by E. P. Bailey and John Baxter to the Wilcox Mining Company on the 1st of June, 1871.

In this deed the former one of Emory Iron and Coal Mining Company to Bailey, trustee, is referred to, the date of its execution stated, and that "afterwards—to-wit, on the 2d day of November, 1869—the party of the first part (E. P. Bailey) sold said land to John Baxter, in pursuance of the power vested in him, for the sum of $15,000, the receipt whereof is hereby acknowledged, and that John Baxter, on the 2d May, 1870, contracted to sell the same to M. C., E. K., E. O., C. C., and S. A. Wilcox, for $40,000, receipt of which is hereby acknowledged, and executed his bond, in which he covenanted to make to them, upon receipt of the purchase-money, a good warranty deed in fee-simple for the same; and, whereas, the said M. C., E. K., E. O., C. C., and S. A. Wilcox did contract and convey to the Wilcox Mining Company, on the 10th of August, 1870, and now authorize said E. P. Bailey, trustee, and John Baxter to convey the same to said Wilcox Mining Company, in discharge of said title-bond to them. Now, therefore, in consideration of the premises and the receipt of the $15,000 paid by John Baxter to E. P. Bailey, trustee, and $40,000 paid by the said M. C. Wilcox *et al.* to said Baxter," the land in controversy is bargained, sold, and conveyed to the Wilcox Mining Company.

It will be observed that this conveyance does not purport to recite a sale and receipt of purchase-

money, in compliance with the terms of the trust deed. It purports to have been made in pursuance to the power vested in the trustee, but not upon the terms and conditions of its proper exercise by him. It does not even recite that it was made after advertisement, or at public auction, or to the highest bidder, or for cash, the recital that it was for $15,-000, the receipt whereof is (now) hereby acknowledged, not being or intended to be an equivalent recital. It shows affirmatively no conveyance to Baxter upon any pretended sale to him, and that Wilcox's bond from him and deed to the mining company were all executed while Baxter had neither legal nor equitable title.

On the same day the Wilcox Mining Company conveyed this land in trust to W. P. Washburne, describing it as all that tract or parcel of land conveyed on the same day by E. P. Bailey, trustee, and John Baxter to said company, which deed was referred to and for greater certainty made part of this conveyance. This deed was made to secure one hundred bonds of $1,000 each at same time issued. These bonds, payable to the bearer, redeemable in five years, or at pleasure of the company payable in ten, bore seven per cent. interest, and were to be put upon the market and sold. In default of payment of interest coupons, the trustee being requested to do so by any *bona fide* holder of such coupons or bonds, was to advertise and sell the property at public auction to the highest bidder, in bar of the right of redemption, on a credit of

Baxter *v*. First National Bank of Knoxville.

one and two years, taking seven per cent. interest-bearing notes, and out of the proceeds of the sale retain compensation and pay off such accrued interest and bonds—*pro rata* if enough is not realized by the sale to pay all.

These deeds were duly registered.  At the time of the execution of the last deed an agreement (never registered) was entered into by John Baxter, the Exchange and Deposit Bank of Knoxville, and the Wilcox Mining Company, showing that an indebtedness to Baxter of $42,600, due by notes of M. C. and E. K. Wilcox, was secured by a deposit of the one hundred bonds issued, and was to be paid by a sale of the same when made by said Exchange and Deposit Bank.  The bank was to sell these bonds as best it could, and apply the proceeds as follows: First, the proceeds of first ten bonds sold to be paid to Baxter, proceeds of second ten to be paid to the Wilcox Mining Company, and of the residue to Baxter until his debt was fully paid.

On the back of each bond issued the trustee indorsed the following certificate: "I hereby certify that the Wilcox Mining Company has executed to me a mortgage purporting to convey the real estate and railroad of said company, the rights and franchises appertaining thereto, and other property specified in said mortgage, in trust for the holders of said bonds of the company, issued and to be issued from time to time, to the amount of $100,000, and for the holders of the coupons issued and to be issued with said bonds for the payment of the semi-

annual interest thereon; that said mortgage is duly recorded in the office for land records of the counties wherein the property and railroad is located, and the foregoing is one of the several bonds secured by said mortgage.

"Knoxville, Tennessee, 20th June, 1871.

"W. P. Washburn, *Trustee.*"

The Wilcox Mining Company defaulted in payment of the interest on these bonds, and Baxter, who had the largest interest therein, demanded a sale, which was accordingly made on the 12th of October, 1872, when Baxter became the purchaser at the price of $20,000, and executed his notes therefor.

Then, on the 21st of October, 1873, he filed a bill against the trustee and beneficiaries, alleging these facts among others, and showing that the first of his notes for the purchase-money fell due on the 12th of October, 1873, and that he desired to pay the balance due on it, claiming a credit of $313.15 already paid and $150 for taxes, after obtaining a further credit for the *pro rata* of fifty-three bonds, which he then held.

In view of this, and other difficulties suggested, and to effect a full and final settlement and adjustment of the rights of all parties in interest, he prayed to file the bill for himself and all other bondholders and beneficiaries under said deed of trust, and to have the aid and authoritative direction of the Court.

Among other relief prayed for was an injunction to restrain Defendant Washburn, trustee, from collecting complainant's notes, or either of them, except this Court in this case, unless otherwise ordered by the Court; for an order allowing him to pay into court the amount which may be found due from him, etc., and for other special and general relief.

There was no specific prayer for a sale of the land, but the Chancellor was clearly authorized to order a sale of it if under the developments in the case he deemed it necessary, a lien having been retained on it to secure payment of Baxter's notes. 15 Lea, 169; 1 Sum., 335. This he did on the 22d day of January, 1880. The decree, after giving Baxter various credits, was in favor of Washburn, trustee, for use of S. B. Lyons, administrator, etc., $4,193.60; F. H. Bradley, $330.16; and the first National Bank of Chattanooga, $322.58—aggregating $4,846.34.

Baxter and Bailey were allowed thirty days to pay this sum into court, and in default of payment the Clerk was ordered to sell. The land embraced in the deed was sold under this decree, and bid off by A. S. Prosser at the price of $300. The biddings were afterward opened, and Lewis T. Baxter, on the 3d of July, 1880, bid it off at $1,250. This sale was reported, and confirmed without exception on the 6th of July, 1880, and writ of possession awarded. Final decree was rendered in the cause on the 10th of January, 1881, and S. B. Lyon, administra-

tor, appealed. Subsequently the Drake Brothers (defendants) sued out a writ of error. The Supreme Court affirmed the decree of the Chancellor.

In the meanwhile (pending this suit), on the 11th of October, 1875, the First National Bank of Knoxville filed a bill against Baxter and Bailey, and on the 26th June, 1876, an amended bill showing that there was a large balance due it as beneficiary under the original deed of trust from the Emory Iron and Coal Mining Company to E. P. Bailey; that Bailey had sold the land to Baxter, but did not execute a deed; that Baxter and Bailey had conveyed to the Wilcox Mining Company; that Baxter had recovered the land from this company and become revested with title to the same.

Complainant charges that Bailey gave no bond as trustee, received no purchase-money from Baxter, but acknowledged receipt of it upon the false assumption that the debts secured by said trust deed belonged to Baxter; that Baxter, being liable as indorser for all complainant's debts, for which he attached the property of the company, and to secure which the deed of trust was executed, has become possessed of a large part, if not all, the property, while complainant, the real creditor, still holds its debt unpaid and unsatisfied; that it is entitled to follow said property into Baxter's hands and subject it to sale for satisfaction of this debt. The prayer is that a lien be declared on the property in controversy in complainant's favor, and it be sold to satisfy amount found due it.

Baxter and Bailey answered, proof was taken, and cause progressed to decree. The Chancellor decreed the relief sought. In this decree it is recited that Baxter and Bailey conceded (so far as they were concerned) the right of complainant to follow the lands so bid off by Baxter. The land in controversy was sold under this decree on the 17th June, 1879, and bid off by the bank. Sale being confirmed (June 27th, 1879), Baxter appealed to the Supreme Court, where, with some modifications not material to be noticed, the decree was affirmed, and writ of possession awarded, under which the bank was subsequently put in possession of said land.

In the bill filed in the cause now before us it is alleged that complainant is in possession of the land. The bill was filed August 25th, 1883.

The answer, which was not filed until April 30th, 1884, denies that complainant was in possession in August, and says the fact is that defendant was put in possession in 1879, and remained until January 4th, 1884, when it was dispossessed under writ of possession issued in the case of *Baxter* v. *The Bank.*

It was upon the assumption of this fact that the Chancellor, on dismissing complainant's bill awarded a writ of restitution. In this we think the Chancellor erred. Both parties claim to be in possession when the bill was filed. If complainant was not in possession, then he has not since obtained possession by means of any action in the

cause before the Chancellor, and defendant has no cross - bill or other proceeding instituted in this cause requiring the Chancellor to take such action; and the decree to that extent is unauthorized.

The only question in the case is as to the correctness of his holding that complainant was entitled to no relief, and dismissal of the bill, and in this we think he was correct.

We have recited the facts in reference to the sale by Bailey, trustee, to Baxter; the fact that no money was paid and no compliance with the terms and conditions of the sale provided for in said deed shown to have occurred; no conveyance made, and nothing done that could be pretended to be in accordance with the requirements of the deed.

In the deed made by Baxter and Bailey to the Wilcox Mining Company an effort appears to have been made to cure, by recitals, the omissions noticed; and while this deed, which we have hereinbefore shown, did not effect this purpose, it would not, as against defendant, have been even *prima facie* evidence if it had. *Henderson* v. *Galloway*, 8 Hum., 692.

That Baxter, and Bailey, and complainant, had actual notice of the superior equity of the First National Bank, as decreed by the Chancellor, and that Washburn, trustee, and the beneficiaries in the deed to him had constructive notice, as well as the Wilcox Mining Company, is, we think, clear. Each deed referred to the others preceding it, and

a like reference in the certificate quoted on the back of each bond, gave the beneficiaries like notice.

The case is not at all similar to that cited by complainant's counsel. 17th Otto, 478. In that case Sweet and wife executed a deed of trust to secure an indebtedness due by notes to Davis. The notes were payable in one, two, and three years, and in amount aggregated $8,000. In default of payment the trustees, Davis and Stickney, were authorized to sell, and the purchaser was not required to see to the application of the purchase-money. But, in the event of payment of notes and interest, the trustees were required to release and convey the premises to Mrs. Sweet. These notes had on the margin the printed words, "Secured by deed of trust." They were indorsed by Augustus and Charles T. Davis, and before maturity were transferred by the indorsers, for full value, to Jackson, Brother & Co.

Before any of the notes fell due, and without the knowledge of Jackson, Brother & Co., the trustees executed a deed of release of the land to Mrs. Sweet, reciting that the debt secured by the trust deed had been fully paid and discharged, as appeared also by the signature of Augustus Davis, who joined in the release. Thereupon Sweet and wife executed a second deed of trust to secure another note for money borrowed of Williams, and Davis furnished Williams, from whom the last money was borrowed, with certificates of a convey-

ancer that he had examined the title on the 14th of September and found it good, subject to the first trust deed, and again on the 28th of September, when the only changes were the release and the second deed of trust. The last amount secured not having been paid, the trustees sold the land to Blackwood to satisfy Williams' debt. Jackson, Brother & Co., holders of the notes secured in the first deed, then filed a bill against Sweet and wife, Williams, and Blackwood, and sought to set aside the last deed and sale thereunder, and have their debt given priority.

Upon these facts the Court held, and properly, that Williams was entitled to priority; that he had neither actual nor constructive notice that the former debts were unpaid at the time he lent the money and took the second deed. The release to Mrs. Sweet was in exact accord with the terms of the first deed. The registration showed no irregularity, and he was justified in assuming the first deed to be, as it appeared to be, settled and removed as an incumbrance.

To again recite points of difference is unnecessary. It is sufficient to say that no clearer case of the application of doctrine of innocent purchaser without notice could be well supposed than the case just quoted, and no more proper case for its non-application than the one before us.

The bill will, therefore, be dismissed with cost.